IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| KENNETH SMITH, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(B),<br><br>*Plaintiff*,<br>v.<br><br>BRIDGER LOGISTICS, LLC, a Texas limited liability company,<br><br>*Defendant.* | Civil Action No. 2:18-cv-193<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Kenneth Smith, and other similarly situated workers, (hereinafter referred to as "Plaintiffs") by and through the undersigned counsel, bring this Complaint, as a collective action, pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, demand a jury trial, and allege as follows:

### INTRODUCTION

1. Defendant Bridger Logistics LLC (hereinafter referred to as "Defendant") attempted to circumvent the Fair Labor Standards Act's ("FLSA") protections by misclassifying Plaintiff and other similarly-situated workers as independent contractors in order to deny them overtime wages. Instead of paying overtime, Defendant has paid Plaintiffs a straight-pay rate and

in a manner that has failed to compensate them for overtime work. This collective action seeks to recover the unpaid overtime wages and liquidated damages owed to these misclassified workers.

2. Defendant engaged in this behavior willfully and without regard for the economic welfare of their employees and with full knowledge that Plaintiffs were conferring benefits upon Defendant that were improperly procured.

3. As such, Plaintiff seeks relief from the Court, including relief for those of Defendant's employees that are similarly situated.

## JURISDICTION, VENUE AND PARTIES

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) as this Complaint raises a federal question and a private cause of action, including a collective action, is authorized by the FLSA. This Court also has supplemental jurisdiction over Plaintiffs' non-statutory claims by virtue of 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant as the Defendant is a resident of the State of Texas and is engaged in continuous and systematic business activities within this State. Defendant Bridger Logistics, LLC is a limited liability company duly organized and existing under the laws of the State of Texas, with its principal place of business located in Dallas, Texas, who may be served at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

6. Venue is proper in the Southern District of Texas pursuant to 28 U.S. C. §§ 1391(a), (b) and (c) because Defendant is a resident of the State of Texas, a substantial part of the events or omissions giving rising to Plaintiffs' claims occurred in the Southern District of Texas, and Defendant is subject to the personal jurisdiction of the Court.

7. Plaintiff Kenneth Smith is a resident of the State of Texas and was formerly employed by Defendant. At all relevant times described herein, Plaintiff was an employee engaged in commerce as defined by the FLSA. Specifically, Plaintiff was, or is, a crude oil truck driver, transporting oil long distances within Texas, and in many instances, Plaintiff does not, or did not, return home from work trips to sleep or eat. During the period covered by this lawsuit, Plaintiff regularly worked uncompensated hours and in excess of 40 hours per week ("overtime hours"), hereby consents to proceed as a Plaintiff in this matter and has attached his consent as an attached Exhibit.

8. At all relevant times described herein, Defendant has been an enterprise engaged in commerce, as defined by the FLSA. Specifically, Defendant was, and remains, in the business of assisting companies in shipping oil all over the United States, and upon information and belief, has gross annual sales of over $500,000.

9. Even if Defendant does not realize gross annual sales of over $500,000, the Court still has jurisdiction over Plaintiffs' claims as it cannot be reasonably disputed that each Plaintiff was, or remains, engaged in commerce within the meaning of the FLSA.

## THE WILLFUL MISCLASSIFCATION OF PLAINTIFFS AS INDEPENDENT CONTRACTORS

10. Bridger Logistics is a limited liability company that serves midstream and oilfield service-oriented businesses.[1] Bridger is one of the largest crude oil transporters in America with

---

[1] https://www.bridgergroup.com/about

24/7 operations.[2] Its mission is to "create value for [their] customers and achieve operational excellence by harnessing the expertise of [their] highly skilled logistics teams."[3]

11. Thus, Bridger maintains their nonstop operations are an essential element of their reputation in the field. In reality, Bridger takes advantage of misclassified workers by requiring drivers to work up to 85 hours per week at a flat rate of pay, never paying their workers the overtime premium pay they are owed as employees and failing to pay for all work performed.

12. Defendant exercises near total control over Plaintiffs' work-related activities, including dictating when Plaintiffs must have oil delivered and providing the necessary equipment, rather than allowing Plaintiffs to set their own hours and provide their own supplies as one would expect if Plaintiffs are actually independent contractors, each running their own business. This has been done, in part, so that the Bridger could avoid paying their employees their overtime wages.

13. These paychecks often contained deductions for various types of advances made by the Defendant to Plaintiffs. Notably, these paychecks never included deductions for any type of payroll withholding required under federal and state law when an employer-employee relationship is formed.

14. Despite Defendant having tried to structure its relationship with Plaintiffs for the purpose of avoiding an employer-employee relationship, the economic realities of the relationship dictate that Plaintiffs are in fact Defendants' employees. Under the FLSA, courts look to the "economic realities test" which examines the totality of the circumstances, with an examination of the following factors: (1) the degree of control exercised by the employer over the worker; (2) the

---

[2] https://www.bridgergroup.com/transportation
[3] https://www.bridgergroup.com/about

worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the employer's business.

15. Here, all Plaintiffs work for Defendant pursuant to Defendant's complete control over the working relationship. Plaintiffs are not allowed to determine which delivery locations they will travel to on a given day or dictate their schedule generally. Moreover, Defendant controls the manner and ability by which Plaintiffs may deliver their oil shipments.

16. Defendant has provided the trucks and barrel crude trailers required to perform the truck drivers' operations. Additionally, Defendant dispatches drivers to the various delivery locations, requiring drivers to work on the company's schedule as opposed to their own like independent contractors would. Thus, no Plaintiff was afforded the opportunity to expend their own efforts in order to increase their profit or schedule their own deliveries.

17. Further, the working relationship between Plaintiffs and Defendant has been as permanent as possible. Plaintiffs have worked for Defendant for several years with no mention of their employment being temporary.

18. While there can be no doubt that a certain amount of skill is required to engage in the trucking industry as a driver, driving itself is not a unique skill traditionally exercised by independent contractors. To be sure, truck drivers that are true independent contractors do exist; however, many companies utilize employee-drivers. Many drivers prefer to be employee-drivers as this eases the burden of maintaining licensure and ensuring regulatory compliance. In either event, it cannot be stated that driving in and of itself is a highly skilled avocation, even if it is difficult and, at times, stressful.

19. Finally, Plaintiffs' work has been absolutely integral to Defendant's business. While Defendant advertises themselves as being in the business of transporting oil in commerce, the truth is Defendant's income is heavily dependent, or completely dependent, on the *driving* performed by their purported "independent contractors." As to the true nature of Defendant's business, Plaintiffs' work is critical to Defendants' success.

20. Importantly, the primary question posed by the economic realities test is: "Whether the individual is *economically dependent* on the business to which he [or she] renders service?" The answer to this question must unequivocally be answered in the affirmative. Plaintiffs and the Class Members (1) perform work that was integral to Defendants' business; (2) have no ability to affect their opportunity for profit or loss; (3) do not make any investments in facilities or equipment; (4) are provided equipment by Defendants; and (5) have a relatively permanent relationship with Defendants. As such, without their relationship with Defendants, Plaintiffs would realize no economic gain whatsoever.

## COLLECTIVE ACTION ALLEGATIONS

21. Plaintiff and the Class Members perform the same or similar job duties as one another as described in the preceding paragraphs in that the Class Members are other crude oil truck delivers who transport and deliver oil to Defendant's clients.  Further, Plaintiff and Class Members are subjected to the same pay provisions in that they are paid under the same pay plan and are not paid at time-and-one-half their regular rates of pay for hours worked in excess of 40 hours in a workweek.  Specifically, Plaintiff and Class Members are all misclassified as independent contractors and, consequently, must perform certain services for free and without lawful minimum wages and overtime compensation. Accordingly, the Class Members victimized

by Defendant's unlawful pattern and practices are similarly situated to Plaintiff in terms of job duties and pay provisions.

22.     Defendant's failure to pay Plaintiff and the Class Members at the rates required by the FLSA results from generally applicable policies or practices and do not depend on the personal circumstances of the Class Members.  Thus, Plaintiff's experience is typical of the experience of the Class Members.  All Class Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of 40 hours per week.  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.  The questions of law and fact are common to Plaintiff and the Class Members,

23.     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay overtime compensation and minimum wage with respect to Plaintiff and the Class Members. Therefore, Plaintiffs request the Court certify this collective action as soon as possible so that Plaintiffs and this Court may craft a notice process to all other similarly situated employees employed by Defendant during the previous three years who may desire to opt-in to this action.

## COUNT I
**Violation of the FLSA**
**29 U.S.C. §§ 201** *et seq.*

During the relevant period, Defendant has violated and is violating the provisions of Sections 6 and 7 of the FLSA, 29 U.S.C. §§ 206-7, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning

of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed and in excess of the federal minimum wage. Defendant has been aware of the FLSA's overtime and minimum wage requirements and has chosen not to pay Plaintiffs and the Class Members lawfully. Defendant has acted willfully in failing to pay Plaintiff and the Class Members in accordance with the law. Plaintiffs have suffered damages as a result of Defendant's failure to pay overtime, and seek those unpaid wages, liquidated damages, fees, costs, and interest at the highest allowable rate under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for certification of this Complaint as collective action pursuant to the FLSA and entry of judgment in their favor and against Defendant as follows:

1. For an Order awarding Plaintiff (and those who may join in the suit) the costs of this action;
2. For an Order awarding Plaintiff (and those who may join in the suit) attorneys' fees;
3. For and Order awarding Plaintiff (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law; and
4. For an Order granting such other and further relief as may be necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs request a jury trial on all claims described herein, and as may be amended.

Respectfully submitted,

/s/*Jay Forester*
**Forester Haynie PLLC**
**J. Forester**

>Texas Bar No. 24087532
>SD Bar No. 2657413
>1701 N. Market Street, Suite 210
>Dallas, Texas 75202
>(214) 210-2100 phone
>(214) 346-5909 fax
>www.foresterhaynie.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is the Original Complaint and will be served on all Defendants along with the summons and in accordance with the Federal Rules of Civil Procedure.

>/s/ *J. Forester*
>**J. FORESTER**